UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>TAC FINANCIAL, INC.,<br>                                                   Debtor,<br>DIRECT BENEFITS, LLC, and<br>ANDREW C. GELLENE,<br>                                                 Appellants,<br>CHRISTOPHER R. BARCLAY,<br>CHAPTER 7 TRUSTEE, and REMAR<br>INVESTMENTS, LP,<br>                                                 Appellees. | Case No.: 17cv00381-AJB-BGS<br><br>**ORDER DENYING APPELLANTS' MOTION TO STAY DISBURSEMENT OF POLICY PROCEEDS**<br><br>**(Doc. No. 16)** |

Presently before the Court is Appellants Direct Benefits, LLC and Andrew C. Gellene's ("Appellants") motion to stay the disbursement of proceeds from a certain key man life insurance policy. (Doc. No. 16.) Appellees Christopher R. Barclay and Chapter 7 Trustee ("Appellees") oppose the motion. (Doc. No. 25.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for determination on the papers and without oral argument. Accordingly, the motion hearing set for July 6, 2017, is hereby **VACATED**. As explained more fully below, the Court **DENIES** Appellants' motion to stay.

///

///

1

# BACKGROUND[1]

This case comes before the Court on appeal from the United States Bankruptcy Court Southern District of California's February 9, 2017 order approving the settlement between the Trustee of TAC Financial, Inc.'s ("TAC") Chapter 7 bankruptcy case and Remar Investments, LP ("Remar")[2]. (Doc. No. 1; Doc. No. 16-1 at 8.) The underlying bankruptcy case revolves around a certain key man life insurance policy issued by ReliaStar Life Insurance Company (hereafter "ReliaStar") and held by Roy Eder ("Eder"), a former officer and member of the Board of Directors of TAC. (Doc. No. 16-1 at 5.) Eder's life insurance policy had a $5,000,000 death benefit (the "Policy"). (*Id*.)

In early June of 2014, Eder was diagnosed with cancer. (Doc. No. 10 at 6.) At this time the Policy was owned by TAC and TAC paid all premiums. (*Id*. at 7.) The designation of the beneficiaries on the Policy at that time are as follows: TAC 60%; Andrea Kutsch 10%; Cameron Eder 10%; Henry Eder 10%; and Kendal Eder 10%. (*Id*.)

Shortly following his diagnosis, Eder allegedly took action as a purported representative of TAC and transferred the Policy from TAC to himself. (Doc. No. 16-1 at 5.) After TAC's Board voted to remove Eder as CEO and Chairman on July 2, 2014, it was revealed that the beneficiary designations on the Policy had been purportedly changed. (Doc. No. 10 at 8.) As of June 30, 2014, the designation of the beneficiaries on the Policy according to Appellants are: Andrea Eder 60%; Florence Eder 10%; Cameron Eder 10%; Henry Eder 10%; and Kendall Eder 10%. (*Id*.) On July 11, 2014, Michael Frager ("Frager"), Eder's insurance agent, faxed a notice of change of ownership to Reliastar, notifying it that ownership of the Policy had been transferred from TAC to Eder. (*Id*. at 8–9.) Appellants contend that Eder and Frager's maneuvers to change beneficiaries and

---

[1] The Court notes that the allegations in this case are contested. However, as Appellees fail to provide the Court with a statement of facts in their opposition papers, the Court will turn to the allegations presented by Appellants to provide the background of this case.

[2] Appellants assert that Remar allegedly paid Roy Eder $3,100,000.00 to purchase the life insurance policy, without verifying that Eder owned the Policy. (Doc. No. 16-1 at 6.)

owners for the Policy were not approved by either TAC or its board or shareholders. (*Id*. at 9.)

Thereafter, TAC filed a chapter 7 bankruptcy petition on January 6, 2015. (*Id*. at 11.) The Trustee appointed in TAC's bankruptcy case (the "Trustee") alleged that Eder's actions were unauthorized, ultra vires and not legally effective, or, alternatively, if the facts and law supported that they were authorized, and effective as a matter of law to cause a transfer, that such transfer was avoidable and fraudulent. (Doc. No. 16-1 at 5–6.)

Trustee then hired Vanderhoff Law Group ("Vanderhoff") to represent TAC in its case. (*Id*. at 6.) Vanderhoff was to be paid hourly and to (1) assist Trustee with legal work necessary to collect assets and administer claims; and (2) pursue the avoidance of the transfer of the Policy. (*Id*.)

Thereafter, Trustee proposed to settle with Remar by (1) withdrawing the Ultra Vires Claim; (2) transferring ownership of the policy to Remar; (3) acquiring Remar's litigation claim against Eder for fraudulently selling Remar a Policy Eder did not purportedly own; and (4) Remar agreeing that when the $4,750,000 death benefit pays out to it as owner, the Trustee will receive $343,347.68 of the insurance proceeds and Remar, as owner, will receive the balance, or $4,383,903.02. (Doc. No. 10 at 12; Doc. No. 16-1 at 7.) On February 9, 2017, the bankruptcy court approved the settlement over Appellants' objection. (Doc. No. 4-4 at 150–51; Doc. No. 16-1 at 8.) Appellants then took appeal of this approval to this Court on February 24, 2017. (Doc. No. 1.)

While the appeal has been proceeding, Trustee and Remar have filed a motion[3] for an order from the bankruptcy court authorizing the disbursement of interpleaded funds. (Doc. No. 16-1 at 21.) The motion requested the funds be distributed as follows $4,383,903.02 to Remar and $343,347.68 to the Trustee.[4] (*Id*. at 36.) The briefing schedule

---

[3] Appellants incorrectly identify this motion as a "joint motion." (Doc. No. 16-1 at 8, 21.)
[4] The Court notes that Appellants' moving papers state that the motion asked to disburse the proceeds as $137,339.07 to Vanderhoff, $206,007.93 to the bankruptcy estate for payment of Trustee commissions and claims, and $4,383,903.70 to Remar. (*Id*. at 8.)

3

17cv00381-AJB-BGS

established by the bankruptcy court set a motion hearing date for the motion to disburse for July 12, 2017. (*Id.* at 10.)

Subsequently, on April 24, 2017, Vanderhoff filed a second interim fee application seeking authorization for the Trustee to pay him a 40% contingency fee in the amount of $343,347.68. (*Id.* at 43.) After taking this matter off calendar, the bankruptcy court approved the fee application over Appellants' objections. (*Id.* at 8.)

On February 24, 2017, Appellants filed their notice of appeal from the bankruptcy court with this Court. (Doc. No. 1.) The overarching issue on appeal is based on the final order of the bankruptcy court approving the settlement brought by Trustee and Remar. (*See generally* Doc. No. 10.) On May 30, 2017, Appellants then filed the present motion, their motion to stay disbursement of the Policy proceeds that are sitting in the registry of the bankruptcy court. (Doc. No. 16.)

## DISCUSSION

Appellants contend that (1) the bankruptcy court lacks jurisdiction to alter and expand upon Remar's settlement and lacks jurisdiction to grant the relief requested because it will alter the status quo; and (2) that disbursal should be enjoined during the brief period of time necessary to decide the instant appeal before this Court. (*See generally* id.) In opposition, Appellees contend that Appellants are (1) forum shopping; (2) that the injunction motion is premature; and (3) that the injunction motion is a de facto Petition for a Writ of Mandamus. (*See generally* Doc. No. 25.)

**A.     Appellants' Motion to Stay is Not a Writ of Mandamus**

As an initial matter, the Court will turn to Appellees' assertion that the current motion to stay is actually a de facto petition for a writ of mandamus. (Doc. No. 25 at 9–11.) In their reply brief, Appellants assert that Appellees' contention is misplaced. (Doc. No. 26 at 2–4, 7.)

A writ of mandamus "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States*, 389 U.S. 90, 95

4

(1967) (citation omitted).

The Court disagrees with Appellees' characterization of the motion to stay as a writ of mandamus. A mandamus orders a lower court to "perform a specified act." Bryan A. Garner, A Dictionary of Modern Legal Usage 546 (2d ed. 1995). A stay means either (1) "postponement" or (2) "the order suspending a judicial proceeding or the judgment resulting from that proceeding[.]" *Id*. at 833. More specifically, in the legal sense, stay means to "postpone [] until the court determines a contested issue[.]" *Id*. Here, Appellants are not requesting that this Court order the bankruptcy court to either grant or deny the motion to disburse. Instead, Appellants seek to have this Court request that the bankruptcy court temporarily delay its determination on the motion to disburse until the instant appeal is concluded. Accordingly, the Court disagrees with Appellees and finds that the current motion is correctly categorized as a motion to stay.

**B.    Failure to Comply with Presentation Requirement**

Next, the Court finds that pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, the stay filed by Appellants is improperly brought before this Court. Appellees assert that the motion for a stay pending appeal must first be brought before the bankruptcy court. (Doc. No. 25 at 8.) The Court agrees.

"Rule 8007 contains a presentation requirement." *In re Rivera*, Case No. 5:15-cv-04402-EJD, 2015 WL 6847973, at *2 (N.D. Cal. Nov. 9, 2015). "Ordinarily, a party must move first in the bankruptcy court for the following relief . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal[.]" Fed. R. Bankr. P. 8007(a)(1)(A). If the request is instead made directly to the court where the appeal is pending, the moving party must show "that moving first in the bankruptcy court would be impracticable," or "if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling." *Id*. at (b)(2)(A)–(B). "A failure to seek emergency relief in the bankruptcy court is a critical defect and not often overlooked." *In re Rivera*, 2015 WL 6847973, at *2.

Appellants assert that it would be "impracticable" to layer a motion to stay in the

bankruptcy court as the instant motion duplicates the issues pending in the motion to disburse. (Doc. No. 16-1 at 11.) Moreover, Appellants appear to argue that as the bankruptcy court has ruled against them previously, that this motion is properly brought before the district court. (*Id.*)

Absent from Appellants' brief are legal citations that support their contention that the bankruptcy's court's adverse rulings against them satisfies the "impracticability" of filing standard under Rule 8007. Thus, the Court rejects this assertion and additionally notes that it is not an adequate reason to excuse Rule 8007's presentation requirement. Furthermore, the Court finds the remaining argument presented by Appellants to be insufficient. Appellants admit that their motion to stay and their opposition to the motion to disburse asserts identical issues and arguments. (Doc. No. 16-1 at 11.) In light of these similarities, the Court finds that it would only be logical and in fact more practicable for the bankruptcy court to handle both matters together as it is more familiar with the issues and facts of this case. *See DBD Credit Funding LLC v. Silicon Laboratories, Inc.*, Case No. 16-CV-05111-LHK, 2016 WL 6893882, at *6 (N.D. Cal. Nov. 23, 2016) ("[T]he reviewing court should have the benefit of the learning of the lower court, which is more familiar with the parties, facts and legal issues." (citation omitted)).

Accordingly, as the bankruptcy court was not permitted to determine whether a stay is appropriate in the first instance, and concluding that Appellants' assertions supporting a finding of impracticability unpersuasive, the Court finds that Appellants have improperly bypassed[5] the bankruptcy court. *See In re Rivera*, 2015 WL 6847973, at *2 (holding that appellants' motion to stay should be denied as they failed to explain what action they took to have the bankruptcy court rule on the stay motion and that appellants had not persuasively stated why seeking a ruling from the bankruptcy court would have been

---

[5] The Eastern District of New York held that when a party "improperly bypasses the bankruptcy court and seeks a stay first from the district court, the district court lacks the jurisdiction to hear the matter." *In re Taub*, 470 B.R. 273, 276 (E.D.N.Y. 2012).

impracticable). Thus, the Court **DENIES** Appellants' motion to stay for failure to comply with Rule 8007's presentation requirement.

On a final note, the Court notes that the record demonstrates that the briefing schedule for the motion to disburse the policy proceeds was set as follows: the response to the motion to disburse was due on June 3, 2017, and the reply was due by June 20, 2017. (Doc. No. 16-1 at 10.) The hearing for the motion was continued to July 12, 2017, at 2:30 pm. (*Id.*) The instant motion to stay was filed by Appellants on May 30, 2017. (Doc. No. 16.) Thus, it is apparent that Appellants had time to file the motion to stay with the bankruptcy court well before the hearing date on the motion to disburse.[6]

## CONCLUSION

As discussed more fully above, the Court **DENIES** Appellants' motion to stay disbursement of policy proceeds.

**IT IS SO ORDERED**.

Dated: June 30, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[6] As a result, the Court will not analyze the remaining arguments presented by Appellants or Appellee.