UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>TAC FINANCIAL, INC.,<br>　　　　　　　　　　　Debtor,<br><br>DIRECT BENEFITS, LLC, and<br>ANDREW C. GELLENE,<br>　　　　　　　　　　　Appellants,<br><br>CHRISTOPHER R. BARCLAY, Chapter 7 Trustee, and REMAR INVESTMENTS, LP,<br>　　　　　　　　　　　Appellees. | Case No.: 17cv00381-AJB-BGS<br><br>**ORDER:**<br><br>**(1) DENYING APPELLANTS' EX PARTE MOTION TO STAY ORDER PENDING APPEAL; AND**<br><br>**(2) DENYING AS MOOT APPELLANTS' AMENDED EX PARTE MOTION TO STAY WITH APPLICATION TO SHORTEN TIME**<br><br>(Doc. Nos. 44, 47) |

Presently before the Court is Appellants Direct Benefits, LLC and Andrew C. Gellene's ("Appellants") ex parte application for an order staying implementation of the Bankruptcy Court Order that is being reviewed on appeal in this appellate case. (Doc. No. 44.) Appellees Remar Investments, L.P. ("Remar") and the Chapter 7 Trustee ("Trustee") oppose the application. (Doc. Nos. 46, 48.) As explained more fully below, the Court **DENYS** Appellants' motion.

///

1

## BACKGROUND

The Court provides the foregoing abbreviated summary of material facts pertinent to the instant action. Debtor TAC Financial, Inc. ("TAC") employed Mr. Roy Eder as its chief executive officer. (Doc. No. 44-1 at 3.) In February of 2013, TAC applied to ReliaStar for a life insurance policy for Mr. Eder. (*Id*.) TAC was the owner of the policy and paid all the premiums. (*Id*.) At that time, the listed beneficiaries were as follows (1) TAC 60%; (2) Andrea Kutsch 10%; (3) Cameron Eder 10%; (4) Henry Eder 10%; and (5) Kendall Eder 10%. (*Id*.)

Thereafter, in June or July of 2014, Mr. Eder was diagnosed with terminal brain cancer. (*Id*.) Around that same time, Michael Frager, TAC's insurance broker, faxed ReliaStar a transfer of ownership form dated June 27, 2014. (*Id*.) The form requested that ReliaStar change the policy's owner from TAC to Mr. Eder. (*Id*.) On July 15, 2014, ReliaStar sent Mr. Eder a letter confirming the ownership change. (*Id*.)

In November of 2014, Remar agreed to purchase the policy from Mr. Eder ("the Policy"). (*Id*.) The policy amount at that time was $4,750,000. (*Id*.) On November 20, 2014, a third-party, unrelated family trust, grant deeded 3030 Calle Bonita, Santa Ynez, CA 93460 (the "Eder Ranch") to the Eder Trust. (*Id*.) In December 2014, Mr. Eder sold the policy to Remar through Montage Financial for $2,025,300, subject to Mr. Eder retaining a $1,100,000 death benefit until the policy would become uncontestable. (*Id*.) Once the contestability period ended, Remar would pay an additional $1,100,000 and Mr. Eder's retained death benefit would shift. (*Id*.) Moreover, it also agreed to pay $250,000 of this retained death benefit in exchange for Mr. Eder accepting a $25,000 discount on the price. (*Id*.)

On January 6, 2015, TAC filed a Chapter 7 bankruptcy petition. (*Id*. at 4.) The Trustee assigned to TAC then brought an adversary proceeding alleging nine causes of action against various defendants including: (1) fraudulent conveyance; (2) recovery from subsequent transferor's conversion; (3) conversion; (4) two causes for breach of fiduciary duty; (5) negligence; and (6) injunctive relief. (*Id*.) As a whole, the Trustee believed that

TAC owned the policy when it was transferred to Mr. Eder without consideration. (*Id*.; Doc. No. 48 at 7.) At the time of this complaint, the policy's sale proceeds consisted of money in various banks and stock trading accounts and the Eder Ranch. (*Id*.) Specifically, the Trustee asserts that the Eder Ranch was purchased with the policy proceeds and is likewise property of TAC's estate. (*Id*.)

On July 27, 2016, the court granted ReliaStar's motion for interpleader. (Doc. No. 48 at 7.) The interpleader order: (1) discharged and dismissed ReliaStar from this adversary proceeding without prejudice; (2) allowed ReliaStar to continue administering the policy; (3) required ReliaStar, if the death benefit became payable under the policy, to immediately deposit it with the court; (4) released ReliaStar from all liability as to the policy's ownership; (5) enjoined Remar and the Trustee from maintaining or pursuing any future claim out of the policy's ownership; and (6) awarded ReliaStar attorneys' fees payable from the policy's death benefit. (*Id*.)

At issue in the present matter are two different settlements. The first is a settlement between Remar and the Trustee wherein the Trustee was to assign the Policy and 93% of its proceeds ($4,383,903.02) in exchange for Remar assigning its fraud claims against Eder to the Trustee so that it could prosecute them. (Doc. No. 44 at 9; Doc. No. 44-1 at 14–15.) Moreover, the settlement stated that the parties would enter into a general mutual release agreement as to the adversary proceeding and that the Trustee would dismiss the estate's claim against Remar with prejudice. (Doc. No. 48 at 8.) Appellants objected to this settlement arguing that it was not fair and equitable to creditors nor in the best interests of the bankruptcy estate. (*Id*.) Nonetheless, the bankruptcy court overruled the objections and approved this settlement ("the Remar Settlement"). (*Id*.)

The second settlement was between the Trustee and Eder's estate. (Doc. No. 44-1 at 4–5.) The pertinent terms of this settlement are (1) the parties stipulate to a judgment that the Eder Ranch is property of the TAC estate; (2) Upon the Eder Ranch's transfer, the Trustee shall market it for sale; and (3) the Trustee, Mrs. Eder, and the Eder Trust mutually release all claims against one another. (*Id*. at 4–5.) Similarly, Appellants objected to this

settlement. (*Id*. at 3.) However, after analyzing the Ninth Circuit's multi factor test determining if a settlement agreement is fair, reasonable, or adequate, the bankruptcy court approved the Eder Settlement. (*Id*. at 12.)

## LEGAL STANDARD

A motion to stay of a judgment, order, or decree of the bankruptcy court must ordinarily be presented to the bankruptcy judge in the first instance. Fed. R. Bankr. P. 8007. A motion for relief, or of modification or termination of relief granted by the bankruptcy court, may be made to the district court, but such motion must show why the relief, modification, or termination was not obtained from the bankruptcy court. *Id*.; *In re North Plaza, LLC*, 395 B.R. 113, 118 (S.D. Cal. 2008).

Where the bankruptcy court has already denied a stay under Rule 8007 of the Federal Rules of Bankruptcy Procedure, the reviewing court is limited to determining whether the bankruptcy court abused its discretion. *In re Wymer*, 5 B.R. 802, 807 (9th Cir. 1980); *In re North Plaza, LLC*, 395 B.R. at 119. Under this standard, the bankruptcy court's conclusions of law are reviewed *de novo*, but its findings of facts will be upheld unless they are clearly erroneous. *Figter Ltd. v. Teachers Ins. & Annuity Ass'n*, 118 F.3d 635, 638 (9th Cir. 1997) (citing *Feder v. Lazar*, 83 F.3d 306, 308 (9th Cir. 1996)).

## DISCUSSION

Appellants request that this Court stay both the disbursement of Mr. Eder's life insurance policy and the implementation of the Eder Settlement.[1] (Doc. No. 44 at 2.) Remar counters that Appellants are not entitled to ex parte relief, that they have not made a showing of irreparable harm, and that Appellants delayed in bringing this motion. (*See generally* Doc. No. 46.) Trustee contends that Appellants failed to follow Judge Battaglia's

---

[1] Appellants filed a motion to stay with this Court on May 30, 2017, (Doc. No. 16), which was denied on June 30, 2017, for failure to first file their motion to stay with the bankruptcy court per Rule 8007, (Doc. No. 28 at 5). The Court finds that Appellants have fixed that error in the present motion and filed a motion to stay with the bankruptcy court first, which the court later denied. (Doc. No. 44-1 at 11.)

4

civil case procedures for ex parte applications, the relief requested in the motion is largely moot, and that Judge Latham's motion to stay was well-reasoned. (*See generally* Doc. No. 48.) The Court notes that neither Remar nor the Trustee addressed any of the Ninth Circuit factors related to motions to stay.

In assessing the propriety of a stay pending appeal under Rule 8007, courts within the Ninth Circuit apply the same four-factor test that applies to motions for preliminary injunction. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Wymer*, 5 B.R. at 806; *In re North Plaza, LLC*, 395 B.R. at 119–20. Accordingly, the party seeking a stay must establish the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure other parties' interest in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). "Failure to establish even one of these elements dooms the motion." *In re Lindsey*, No. CC-08-1287-PaDMK, 2009 WL 7751414, at *2 (B.A.P. 9th Cir. 2009).

As a threshold matter, the Court notes that it disagrees with Remar's contentions that Appellants' ex parte motion to stay is procedurally defective as they have failed to follow the emergency motion procedures in Rule 8011(d). (Doc. No. 46 at 2.) The Court notes that Rule 8011 makes no mention of emergency filing procedures. Instead, Rule 8011 relates to filing, service, and signatures. Fed. R. Bankr. P. 8011.

Next, as to the Trustee's procedural arguments, the Court agrees. This Court's civil case procedures clearly state that the moving party is to contact opposing counsel prior to filing the motion to meet and confer, and that all ex parte motions will be accompanied by a declaration documenting their various efforts. Civ. Case Proc. III.1. The Trustee states that he only found out about the motion after it was filed through ECF notice and that no meet and confer efforts were made by Appellants. (Doc. No. 48 at 2.) Consequently, Appellants have failed to follow the case procedures set forth by this Court.

Nevertheless, despite these procedural deficiencies, the Court finds it important to

reach the Ninth Circuit factors to address whether a motion to stay is warranted in this matter. Consequently, the Court turns its attention to the first element.

A.   Likelihood of Success on the Merits

Appellants argue that they will likely succeed on their appeal because, according to them, the bankruptcy court erred by using the wrong legal standard in assessing the Trustee's actions and that the bankruptcy court failed to examine the fact and law surrounding their fraud claims. (Doc. No. 44 at 18–23.)

The Ninth Circuit adopts a multi-factor test a court must consider in determining a settlement agreement's fairness, reasonableness, and adequacy: (1) "the probability of success in the litigation"; (2) "the difficulties, if any, to be encountered in the matter of collection"; (3) "the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it"; and (4) "the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). Specifically, "[a]lthough the bankruptcy court has 'great latitude' in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *In re MGS Mktg.*, 111 B.R. 264, 267 (B.A.P. 9th Cir. 1990) (citing *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988)).

Appellants first argue that the bankruptcy court ignored the role and capacity of the Trustee as a fiduciary. (Doc. No. 44 at 20.) However, the Court disagrees. As the bankruptcy court clearly stated, the court's holding in *A & C*, i.e., the business judgment rule, controls approval of settlements and compromises. (Doc. No. 48 at 14.) Thus, the court should presume that the debtor-in-possession acted "prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). Here, the bankruptcy court specifically followed the guidelines as set forth in *A & C* and deferred to the trustee's business judgment in settling litigation. (Doc. No. 48 at 14.)

To oppose the use of the business judgment rule, Appellants cite to *In re Woodson*, 839 F.2d 619 (9th Cir. 1988), to contend that the business judgment standard runs "counter

to controlling legal authority." (Doc. No. 44 at 19.) Curiously, the court in *Woodson* reiterates the standard for the business judgment standard—"The Court may approve a compromise only if it is 'fair and equitable.'" *Id*. at 620. Moreover, the court in *Woodson* rejected the compromise as it left nothing to the creditors. *Id*. This is not the case here where the Trustee now has control of the Eder Ranch, which he will market and sell, and where Appellants have retained 7% of the Policy proceeds. (Doc. No. 44 at 13; Doc. No. 48 at 17.)

Appellants also contend that there are serious legal issues revolving around the bankruptcy court's decision to approve the Eder and Remar Settlements. (Doc. No. 44 at 19–22.) The Court does not agree. As the bankruptcy court made clear in its order denying Appellants' motion for stay, the court *did* base its findings in approving the Remar Settlement based on sufficient facts in the record involving the ultra vires claim. (Doc. No. 48 at 14.) Specifically, based on the significant litigation risk in bringing this case to trial where a jury could find for Remar and thus the estate would receive nothing, as well as based on the fact that a board member of TAC suggested that the board ratified Eder's life insurance policy transfer, the court found that Appellants failed to make a minimum permissible showing that it would prevail on the merits of their appeal. (*Id*. at 14–17.) Furthermore, the bankruptcy court highlighted that the expense and burdens that came with continuing to litigate this issue were reasons enough alone to approve the settlement. (*Id.* at 15 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 472–73 (Bankr. D. Or. 2002).)

Additionally, in denying Appellants' motion to stay, the bankruptcy court highlighted that it did give deference to their views as TAC's largest creditor. (Doc. No. 48 at 16.) However, finding that the Trustee represented all of the creditors' interests, has no personal stake in the case's outcome, reviewed several thousand documents, and only attended mediation after gaining a thorough grasp of the parties' claims and defenses, the bankruptcy court found the Remar Settlement fair and equitable. (*Id*. at 15–16.) Thus, because Appellants have not raised a colorable question as to whether the Remar Settlement was fair and equitable, let alone a strong showing of their likely success on this

issue's merits, the Court finds that Appellants have failed to carry their burden on this motion. *See Hughes v. Arnold*, No. 2:08-00490 JAM, 2008 WL 2169511, at *1 (E.D. Cal. May 22, 2008) ("The movant's failure to establish even one of the elements dooms the motion."). Thus, the Court **DENIES** Appellants' ex parte application for a motion to stay.

## **CONCLUSION**

As explained more fully above, the Court **DENIES** Appellants' ex parte application for a motion to stay and **DENIES AS MOOT** Appellants' amended ex parte motion to stay order pending appeal with application to shorten time. (Doc. Nos. 44, 47.)

**IT IS SO ORDERED**.

Dated: September 22, 2017

Hon. Anthony J. Battaglia
United States District Judge