UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>TAC FINANCIAL, INC.,<br>           Debtor,<br><br>DIRECT BENEFITS, LLC, and<br>ANDREW C. GELLENE,<br>           Appellants,<br><br>CHRISTOPHER R. BARCLAY, Chapter 7 Trustee, and REMAR INVESTMENTS, LP,<br>           Appellees. | Case No.: 3:17-cv-00381-AJB-BGS<br><br>**ORDER GRANTING APPELLEE'S MOTION TO DISMISS APPEAL AS MOOT**<br><br>(Doc. No. 56) |

Presently before the Court is Christopher R. Barclay's, the Trustee and Appellee in this case, motion to dismiss the underlying bankruptcy appeal as moot. (Doc. No. 56.) Opposition was filed to the motion. (Doc. No. 58.) For the reasons explained in greater detail below, the Court **GRANTS** the Trustee Christopher R. Barclay's ("Barclay") motion to dismiss the appeal as moot.

## I. BACKGROUND

This appeal arises from a February 9, 2017 bankruptcy order that approved a settlement between the Trustee Christopher R. Barclay and Montage Financial Group, Inc. ("the Montage Settlement"). (Doc. No. 1-3 at 2.) The underlying background of the case is

1

as follows:[1]

In August of 2008, Mr. Roy Eder became the chief executive officer of Debtor TAC Financial, Inc. ("TAC"). (Doc. No. 44-1 at 3.) Thereafter, in February of 2013, TAC applied to ReliaStar for a $5 million life insurance policy for Mr. Eder, but TAC would be the owner and pay the premiums. (*Id.*) The listed beneficiaries of the policy were at that point in time: (1) TAC (60%); (2) Andrea Kutsch (10%); (3) Cameron Eder (10%); (4) Henry (10%); and (5) Kendall Eder (10%). (*Id.*) By June of 2014, TAC had not paid any of the outstanding premiums due on the policy. (*Id.*)

Around July of 2014, Mr. Eder was diagnosed with terminal brain cancer. (*Id.*) At that same time, Michael Frager, TAC's insurance broker, faxed ReliaStar a transfer of ownership form dated June 27, 2014. (*Id.*) The form requested that ReliaStar change the policy's owner from TAC to Mr. Eder. (*Id.*) Mr. Eder signed the form on behalf of TAC and as chairman and CEO. (*Id.*) Concurrently, Mr. Eder also created the Eder Trust to facilitate that $5 million transfer of the policy benefits to himself. (*Id.*) The policy ownership change was confirmed on July 15, 2014. (*Id.*)

In October of 2014, ReliaStar made a $250,000 distribution to Mr. Eder and the next month Appellee Remar Investments, LP ("Remar") agreed to purchase the policy from Mr. Eder. (*Id.*) In December of 2014, Mr. Eder sold the policy to Remar through Montage Financial for $2,025,300, subject to Mr. Eder retaining a $1,100,000 death benefit until the policy would become uncontestable. (*Id.*) Remar also agreed to pay $250,000 of the retained death benefit in exchange for Mr. Eder accepting a $25,000 discount on the policy price. (*Id.* at 4.) The same month, the policy's owner and beneficiary designation changed to list Remar as the owner and 100% primary beneficiary of the policy. (*Id.*)

On January 6, 2015, TAC filed a voluntary Chapter 7 Bankruptcy Petition. (*Id.*) Thereafter, on August 11, 2015, the Trustee Barclay brought an adversary proceeding

---

[1] The Court employs the background as explained by the bankruptcy court in their September 11, 2017 Order. (Doc. No. 44-1.) The facts of the case as presented by Appellants in their brief are in dispute. (Doc. No. 10; *see* Doc. No. 12.)

alleging nine causes of action against various defendants: (1) two causes of fraudulent conveyance; (2) recovery from subsequent transferors conversion; (3) recovery from subsequent transferees; (4) conversion; (5) two causes of breach of fiduciary duty; (6) negligence; and (7) injunctive relief. (*Id.*) Barclay claimed that TAC owned the policy when it was transferred to Mr. Eder without consideration and that all of the policy and its proceeds were property of the estate. (*Id.*)

After settlement negotiations, Barclay entered into a settlement agreement ("Remar Settlement") with Remar wherein in he agreed to assign the policy and 93% of its proceeds ($4,383,903.02) in exchange for Remar assigning its fraud claims to him so that he could prosecute them. (Doc. No. 44 at 9; Doc. No. 16-1 at 48; Doc. No. 44-1 at 14–15.) Moreover, the settlement stated that the parties would enter into a general mutual release agreement as to the adversary proceeding and that the Barclay would dismiss the estate's claim against Remar with prejudice. (Doc. No. 48 at 8.) Appellants objected to the settlement arguing that it was not equitable to them and in the best interests of the bankruptcy estate. (Doc. No. 44 at 9.) However, the Bankruptcy Court overruled Appellants' objection and approved the Remar Settlement. (*Id.* at 10.)

Currently, the Remar Settlement has been fully effectuated. (Doc. No. 56-1 at 5.) On February 9, 2017, the assignment by Remar to the Trustee of all claims that Remar had against Mr. Eder became effective. (*Id.*) Moreover, the insurance proceeds were distributed to the parties in accordance with the terms of the Remar Settlement and pursuant to an order of the Bankruptcy Court entered on September 14, 2017. (*Id.* at 6.) Furthermore, the claims against Remar in the adversary proceeding were dismissed and the Bankruptcy Court has closed the adversary proceeding. (*Id.*)

## II.     PROCEDURAL BACKGROUND

This appeal from the bankruptcy court's February 9, 2017 order was filed on February 24, 2017. (Doc. No. 1.) On May 1, 2017, Appellants' brief was filed, (Doc. No. 10), and on May 12, 2017, Barclay filed his brief, (Doc. No. 12).

Thereafter on May 30, 2017, Appellants filed a motion to stay disbursement of

3

3:17-cv-00381-AJB-BGS

policy proceeds, (Doc. No. 16), which was denied on June 30, 2017, for failure to comply with the procedural requirements of Federal Rule of Bankruptcy Procedure 8007, (Doc. No. 28). Subsequently, various motions were filed: Appellants' motion to supplement the record on appeal, Barclay's motion to strike the motion to supplement, Barclay's motion to strike CM/ECF document number 40, and an ex parte motion to stay pending appeal. (Doc. Nos. 29, 38, 42, 44.) On September 22, 2017, the Court denied Appellants' ex parte motion to stay the order pending appeal. (Doc. No. 51.) Then on November 22, 2017, the Court denied Remar's motion to supplement, granted in part and denied in part Remar's request for judicial notice, denied Appellants' cross motion to supplement the record, and denied as moot the two motions to strike. (Doc. No. 55.) The instant motions were then filed on January 16, 2018, and January 31, 2018. (Doc. Nos. 56, 59.)

### III.    DISCUSSION

A.    Judicial Notice

Both Barclay and Appellants request judicial notice of several documents. Barclay seeks judicial notice of nine bankruptcy court documents. (Doc. No. 56-2.) Further, attached to Barclay's reply brief, he requests judicial notice of four more district court and bankruptcy court documents. (Doc. No. 61-1.) Appellants' request judicial notice of an order from Judge Curiel, two bankruptcy court orders, and two CM/ECF documents from this case. (Doc. No. 58-1.)

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court finds judicial notice of all of the documents warranted as they are public record documents. *See Spitzer v. Aljoe*, No. 13-cv-05442, 2018 WL 3275148, at *2–3 (N.D. Cal. June 15, 2016). Moreover, courts have routinely taken judicial notice of documents and records from other court proceedings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, the Court **GRANTS** both Barclay and

Appellants' requests for judicial notice.

B. The Instant Appeal is Moot

Barclay contends that the instant appeal is now constitutionally, equitably, and statutorily moot. (*See generally* Doc. No. 56-1.) In opposition, Appellants argue that this Court could still fashion effective relief for Barclay and the creditors of the bankruptcy estate by entering a money judgment for damages against Remar. (Doc. No. 58 at 4.) Thus, Appellants request that this Court deny Barclay's motion. (*See generally* Doc. No. 58.)

The jurisdiction of federal courts is limited to actual cases and controversies. U.S. CONST. art. III, § 2, cl. 1. "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Felster Publ'g v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986)). "In bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory." *Clear Channel Outdoor Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. B.A.P. 2008). The "party moving for dismissal on mootness grounds bears a heavy burden." *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2013).

i. *The Instant Appeal is Not Constitutionally Moot*

Constitutional mootness originates from Article III of the United States Constitution, "which provides that the exercise of judicial power depends on the existence of a case or controversy." *In re Could*, 401 B.R. 415, 421 (9th Cir. B.A.P. 2009). Thus, the doctrine of constitutional mootness is essentially a recognition of Article III's prohibition against federal courts issuing advisory opinions. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Additionally, though Article III mootness has a "flexible character," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980), it applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Here, the issue on appeal is whether the bankruptcy court erred in approving the Remar Settlement. (*See generally* Doc. No. 10.) However, despite the fact that the Remar

Settlement has been fully consummated, the assignment of all claims that Remar had against Mr. Eder became effective on February 9, 2017, the insurance proceeds have been distributed, and the mutual general releases between Barclay and the Eder Trust have been approved, there is still a live case or controversy as it is still possible to fashion some relief. Mainly, the Court finds that if it were to determine that the Remar Settlement should not have been approved, Appellants, i.e. the creditors, to TAC's bankruptcy case could be provided monetary damages.

Barclay asserts that it would be impossible to fashion the relief that Appellants seek as they wish to reverse the order approving the Remar Settlement so that the claims against Remar may be litigated. (Doc. No. 61 at 7.) However, as Barclay illustrates, the Remar Settlement has been fully consummated and the claims that Remar assigned to Barclay were released as part of the settlement with another party. (*Id.*) Despite these actions, the Court finds that if it were to determine that the Remar Settlement should not have been approved by the Bankruptcy Court, Appellants may be provided monetary relief for the insurance proceeds that were distributed. This form of relief might be difficult or inequitable, but it is not impossible. Therefore, the appeal is not constitutionally moot. *See Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012).

### ii. The Appeal is Equitably Moot

Equitable mootness occurs when a "comprehensive change of circumstances" has occurred so "as to render it inequitable for this court to consider the merits of the appeal." *In re Roberts Farms*, 652 F.2d 793, 798 (9th Cir. 1981). The question is whether the case "present[s] transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." *Lowenschuss v. Selnick (In re Lowenschuss)*, 170 F.3d 923, 933 (9th Cir. 1999). The Ninth Circuit in *In re Thorpe Insulation Co.*, 677 F.3d 869, articulated a four step test to determine whether an appeal is equitably moot: (1) whether a stay was sought; (2) if a stay was sought but not gained, then the court should look to whether substantial consummation of the plan has occurred; (3) whether third party rights

3:17-cv-00381-AJB-BGS

have intervened; and (4) whether the bankruptcy court can fashion effective and equitable relief "without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *Id.* at 881.

First, the Court highlights that Appellants readily sought motions to stay in this case—first on May 30, 2017, Appellants filed a motion to stay disbursement of policy proceeds, which was denied on June 30, 2017, (Doc. Nos. 16, 28), and second on September 14, 2017, where Appellants filed an ex parte motion to stay order pending appeal, which was denied on September 22, 2017. (Doc. Nos. 44, 51.) Additionally, Appellants sought a stay motion in the bankruptcy court on July 31, 2017, which was later denied on September 14, 2017. (Doc. No. 56-1 at 6; Doc. No. 58 at 6.)

Barclay contends that as all of the foregoing motions were motions to stay the disbursement of the interpled funds and were not motions to stay the entire action related to the Remar Settlement that Appellants have not satisfied this first element. (Doc. No. 56-1 at 15; Doc. No. 66 at 9.) Unfortunately, Barclay has failed to provide case law to support this contention and furthermore, the Court finds no distinction between the two as the motions to stay filed by Appellants related directly to the Remar Settlement. Accordingly, based on the record, Appellants pursued "with diligence all available remedies to obtain a stay[.]" Consequently this factor weighs in favor of Appellants. *See In re United Producers, Inc.*, 526 F.3d 942, 948 (6th Cir. 2008) ("When an appellant does not obtain a stay of the implementation of a confirmation plan, the debtor will normally implement the plan and reliance interests will be created. Thus, the failure to obtain a stay will count against the appellant . . . ."); *see also In re Mortgages Ltd.*, 771 F.3d 623, 628 (9th Cir. 2014) (finding that even though it was not successful, the party had diligently pursued the appeal as he filed motions to stay in the bankruptcy court and district court).

Second, as a stay was sought in the district court but not gained, the Court must now determine whether substantial consummation of the plan has occurred. The Bankruptcy Code defines substantial consummation as: (a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the

successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan. 11 U.S.C. § 1102(2). Here, all of the provisions of the Remar Settlement have been distributed or finalized. The assignment by Remar to the Trustee of all claims that Remar had against Mr. Eder became effective on February 9, 2017, through an order of the bankruptcy court. (Doc. No. 56-1 at 12.) Additionally, per the bankruptcy court's August 28, 2017 order, all of the funds have been disbursed. (Doc. No. 56-4 at 3–4.) Furthermore, the insurance proceeds were distributed to the parties by the bankruptcy court's order entered on September 14, 2017. (Doc. No. 56-1 at 12.) Accordingly, the Court concludes that the plan has been substantially consummated and thus, this factor weighs in favor of Barclay.

The Court notes that substantial consummation of the bankruptcy plan often brings with it a widespread change that renders the appellate review of the merits of the plan impractical. *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 289 (9th Cir. B.A.P. 1998). However, this is not always the case. Thus, "the fact that a plan is substantially consummated . . . does not, by itself, render an appeal moot." *Id*. The Court must still consider whether, despite substantial consummation, it can fashion effective relief. *Id*. Consequently, the Court turns to the final two factors from *Thorpe*.

The Court must now evaluate "whether modification of the plan or reorganization would bear unduly on the innocent." *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 961 (7th Cir. 1997). An important consideration is whether all the parties affected by the appeal are before the Court. *See In re Arnold & Baker Farms*, 85 F.3d 1415, 1420 (9th Cir. 1996). In analyzing this factor, the Court must determine "whether it is possible to [alter the Settlement] in a way that does not affect third party interests to such an extent that the change is inequitable." *In re Thorpe Insulation Co.*, 677 F.3d at 882. The Court "may be powerless 'to undo what has already been done'" if "a trustee has already sold assets to third parties." *In re Focus Media, Inc.*, 378 F.3d 916, 922–23 (9th Cir. 2004) (citing *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 187 (9th Cir. 1977)).

8

"The policy behind mootness is 'to protect the interest of a good faith purchaser ... of the property.'" *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) (quoting *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988)).

Pursuant to the Remar Settlement, the proceeds from the life insurance policy were disbursed and the claims that Remar had against Mr. Eder were assigned to the Trustee. (Doc. No. 66 at 10.) The Trustee then released those claims as part of the Eder Settlement. (*Id.*) The Eder Settlement then in turn conveyed the Eder Ranch to the Trustee. (*Id.*) The Trustee sold the Eder Ranch to a good faith purchaser for value and two third parties released their liens in exchange for discounted payments of their claims against Mr. Eder. (*Id.*) The various third parties relied on the finality of the bankruptcy court orders. A modification or reorganization of the Remar Settlement would unduly burden these third parties. It would affect the various orders they relied upon in releasing their liens and ultimately selling the property. Accordingly, the Court concludes that altering the Remar Settlement would affect the third parties' interests to such an extent that change would be inequitable.

Fourth, the Court must evaluate "whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *In re Thorpe Insulation Co.*, 677 F.3d at 883. Appellant argues that the bankruptcy court erred in approving the Remar Settlement as it was not fair and reasonable. (Doc. No. 58 at 2.) However, in order for the bankruptcy court to fashion effective and equitable relief now, the bankruptcy court would have to unravel the Remar Settlement, which would in turn require the unraveling of the Eder Settlement. Both the Eder Settlement and the Remar Settlement have been fully consummated. The Eder Ranch has been sold to a good faith purchaser. The insurance proceeds have been distributed and the mutual general releases between Barclay and the Eder Trust have been distributed. Therefore, granting effective relief would completely undo the bankruptcy court's plan.

Based upon the four *Thorpe* factors, the appeal is equitably moot.

### iii. The Instant Appeal is Not Statutorily Moot

Sales of property of the estate under § 363(b) and (c) are protected by § 363(m), which states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

"The Ninth Circuit has held that '[section] 363[ (m) ] by its terms applies only 'to an authorization under subsection (b) or (c) of this section.'" *Save Al-Huda Sch. Found. v. Islamic Soc'y of San Francisco*, No. 09-05665, 2011 WL 672658, at *4 (quoting *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 35 (B.A.P. 9th Cir. 2008)). "Statutory mootness under the Bankruptcy Code, then, is limited by the statutory language." Here, Appellant is not appealing the sale order of the Eder Ranch. Section 363(m) by its terms does not apply to the instant appeal and the appeal is, therefore, not statutorily moot.

### C. The Bankruptcy Court Did Have Jurisdiction

Appellant asserts that the filing of a notice of appeal from the order approving the Remar Settlement deprived the bankruptcy court of jurisdiction to enforce the Remar Settlement. The rule divesting lower courts of jurisdiction of aspects of a case involved in an appeal is not absolute. *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000). A trial court "retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment." *Id.* Here, the bankruptcy court did not change the status quo by altering or expanding the Remar Settlement. The bankruptcy court merely effectuated the terms of the Remar Settlement. Therefore, the Bankruptcy Court acted within its

jurisdiction despite Appellant's notice of appeal.

## IV. CONCLUSION

The instant appeal is equitably moot. Appellees' motion to dismiss the bankruptcy appeal as moot is **GRANTED**. Appellant's bankruptcy appeal is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 25, 2018

Hon. Anthony J. Battaglia
United States District Judge